Bell, Trustee, vs. Radcliff.

## BELL, TRUSTEE, vs. RADCLIFF.

1. DEED OF TRUST: *To secure future advances, etc.; how construed.*
   A deed of trust recited that it was executed to secure a given sum for supplies already furnished, and supplies, cash, etc., to be advanced during the year, to enable the grantors to raise a crop on the premises; held, that while the amount was limited in terms, the controlling purpose of the deed was to secure a sufficient amount of supplies to enable the grantors to raise the crop, and a court of equity, if necessary to carry out the purposes of the trust, will protect and uphold additional advances over and above the limitations in the deed.

2. ———: *Waiver, etc.*
   Where the amount limited in a deed of trust executed to secure supplies and advances in the raising of a crop is insufficient to carry out the purpose of the trust, and the beneficiary under a second deed assents to additional advances under the prior deed, it will be regarded as an implied waiver and postponement of his equities until all the advances under the older deed are satisfied out of the trust fund.

3. APPLICATION OF PAYMENTS:
   Where different debts are due from the same party, the rule is well settled that he who makes the payment must declare on what account he pays it; if the payment is general, the right of appropriation is in the creditor.

APPEAL from *Lincoln* Circuit Court.

Hon. A. C. Jones, Special Judge.

*Bell* and *L. A. & X. J. Pindall*, for appellant.

*H. Carlton, contra.*

Turner, J.:

This is a bill in equity brought by Thomas D. Radcliff as trustee, against W. F. Owens, as trustee.

It appears that in the year 1873, Tate & Faulkner, who were cultivating a plantation in Lincoln County, made application to Sledge, McKay & Co., of Memphis, Tenn., for supplies to enable them to cultivate said plantation for that year. That to secure Sledge, McKay & Co. in making them advances, they executed for their benefit a deed of trust bearing date the 22d of April, 1873, whereby they conveyed to M. Cheatham in trust for the benefit of Sledge, McKay & Co., all of one-half interest in all the cotton crop then being planted, and to be grown by the said Tate & Faulkner, and all their employees during that year on the plantation, more particularly known as the property of the Clay estate, and also all the interest that might accrue to Tate & Faulkner during that year in all the remaining one-half of all the said crop by advancing supplies, or otherwise, and also all the mules then on said plantation, and being used to grow said crop, making forty-three head in all, reciting further that said deed was made in trust for the following purposes, to-wit : That whereas the said Tate & Faulkner were justly indebted, or to become indebted during that year unto the said Sledge, McKay & Co., in the sum of thirty-five hundred dollars ($3500) for supplies already advanced, and supplies, cash and merchandize to be advanced during that year to enable them to raise and grow a crop on said plantation, all of which said indebtedness was due and payable on the first day of November thereafter ; said deed of trust provided further, that in the event the said

Tate & Faulkner should fail to pay all or any part of said indebtedness on the day it becomes due, then the said Cheatham, trustee as aforesaid, was thereby empowered to take into his possession all the aforesaid property, all the mules and crops, and after advertising the same for public sale twenty days at the court house door of Lincoln County, giving time, terms and place of sale, sell to the highest bidder for cash all the aforesaid property, and out of the proceeds pay first all cost of executing said deed, and apply the residue, so far as is necessary, to the payment of all of said indebtedness, and the remainder, if any, to go to the said Tate & Faulkner, or their representatives.

It further appears that at the same time another deed of trust was prepared and soon afterwards executed by Tate & Faulkner to Thomas D. Radcliff, in trust for the benefit of Thomas S. Tate for the same property embraced in the first deed, reciting that it is a second deed of trust and is in no manner to interfere with the deed given to Sledge, McKay & Co., and should in no manner be considered a claim until the said first deed should be fully satisfied, and was made in trust for the following purposes, to-wit : That whereas the said Tate & Faulkner were justly indebted to the said Thomas S. Tate in the sum of $4000 or thereabouts, the said Thomas S. being endorser on a certain note due from Tate & Faulkner to Lane, Moore & Co., and now held by the Merchants' National Bank of Memphis, and being anxious to secure the said Thomas S. as endorser on said note, the said Tate & Faulkner did for that purpose execute said deed of trust all of which said indebtedness was due the first of January, 1874, and providing that if the said Tate & Faulkner failed to pay said indebtedness on the day it became due, then the said trustee was empowered to take into his possession all the said property and make such disposition of it as was provided in the first deed.

The said bill after setting forth the execution of the said deeds of trust, alleges that the said second deed of trust was executed and delivered with the full understanding of all parties, that Sledge, McKay & Co. should advance in the way of goods, supplies, etc., to Tate & Faulkner only to the amount specified in the first deed of trust, to-wit: the sum of thirty-five hundred dollars ($3500) and no more, and that under such agreement and understanding Tate & Faulkner executed and delivered, and the said Thomas S. Tate accepted the second deed of trust for the purposes therein stated, and that but for the said understanding and agreement the said apuellee would not have accepted and taken the second deed of trust. That Sledge, McKay & Co. advanced other sums in the way of goods, supplies, etc., above the sum of $3500 without the consent of the said T. S. Tate, and was a violation of the agreement between the parties and a gross fraud upon the rights of the said Thomas S. That Tate & Faulkner shipped and delivered cotton covered by said first deed of trust to Sledge, McKay & Co., to the amount of $4700, in the fall of 1873, it being more than was necessary to pay off and discharge said deed of trust. That W. F. Owen, as trustee under said deed of trust, had advertised for sale the 3d day of May, 1874, at the store of Taylor & Taylor, at South Bend, for cash in hand, thirty-seven of the mules on the plantation before mentioned, and about twenty bales of cotton, to satisfy a pretended debt under said deed of trust, when the same was actually paid off. That the said sale if permitted to be made, would cause great and irreparable injury to the said Thomas S. Tate, wherefore appellee prays that the appellant be restrained from selling or disposing of said property in any way.

On the 29th of April, 1874, the injunction prayed for was granted by the judge of the Circuit Court.

At the October Term, 1874, of the Lincoln Circuit Court, appellants filed their demurrer to the appellee's complaint, assigning the following causes :

*First*—Because said complaint does not state facts sufficient to constitute a cause of action.

*Second*—Said plaintiff has as appears a full and adequate remedy at law.

*Third*—Said plaintiff has not made said Sledge, McKay & Co. parties to his bill, when by said bill they are necessary parties defendants.

At the April Term, 1875, of the Circuit Court, said demurrer was sustained by the court, and leave was granted the appellees to amend their bill.

And at the same term of the court, the death of W. F. Owens, trustee in the first deed of trust, having been previously suggested and shown, the cause was revived in the name of M. L. Bell, as trustee of Sledge, McKay & Co., and thereupon the appellees filed their amended complaint. And the said defendant M. L. Bell filed his answer to said complaint and amended complaint, and entered the appearance of the appellants N. R. Sledge, A. H. McKay and W. M. Sledge, partners under the name and style of "Sledge, McKay & Co."

The amended bill alleges, that on the 31st of March, 1874, W. F. Owens, then trustee for Sledge, McKay & Co., commenced in the Lincoln Circuit Court, an action of replevin for the cotton and mules in the original bill mentioned ; that the sheriff of Lincoln County executed the writ of replevin by taking into his possession the said cotton and mules out of the possession of Thomas G. Tate and L. Guy Faulkner, against whom the action was brought ; that said sheriff turned said cotton and mules over to the agent of W. F. Owens, trustee as aforesaid, and that on the 4th of April, 1874, the said Owens, as such trustee, advertised

Bell, Trustee, vs. Radcliff.

said cotton and mules at public auction for cash in hand, and that said appellee had no adequate remedy at law to save his *cestui que trust* from great and irreparable injury.

That since the institution of said suit his *cestui que trust* Thomas S. Tate has had to pay off and discharge the obligation that he was endorser on, and for which endorsement and to secure him harmless as said endorser, the said deed of trust was made.

That said T. S. Tate never did give his consent for Sledge, McKay & Co. to furnish any more supplies over and above the amount specified in said first deed of trust, except a small bill of some $300, and that the said Tate & Faulkner did ship cotton to Sledge, McKay & Co., sufficient and more than sufficient to pay off their indebtedness to said Sledge, McKay & Co., of the thirty-five hundred dollars aforesaid and the small amount that T. S. Tate gave his consent to, as aforesaid, with prayer as in the original bill and that appellants be enjoined from prosecuting their replevin suit, and that in the final decree the said T. S. Tate be saved harmless.

The answer of M. L. Bell, the appellant and trustee for Sledge, McKay & Co., in lieu of Owens, deceased, who succeeded M. Cheatham as trustee, admits the two deeds of trust, and that the debts therein mentioned were *bona fide* debts and were due and owing to Sledge, McKay & Co., and Lane & Moore and T. S. Tate, as stated, and that Sledge, McKay & Co. had knowledge of the second deed of trust. Denies they agreed to waive any rights under their deed of trust, or that any of the mules or cotton should go to satisfy the second deed of trust until their own debt was fully paid off and discharged. That while it is true that the deed of trust for the benefit of Sledge, McKay & Co. expresses a debt of only $3500, it was well known to Tate, the beneficiary under the second deed of trust that the said debt was

Bell, Trustee, vs. Radcliff.

for supplies furnished and to be furnished to Tate & Faulkner, and that the said agreement was made at the solicitation of T. S. Tate, the beneficiary in the second deed of trust. That the said T. S. Tate was present at the execution of both deeds of trust and that it was verbally agreed that Sledge, McKay & Co. should advance whatever supplies might become necessary to enable Tate & Faulkner to cultivate their said crop for the mutual benefit of the said Sledge, McKay & Co. and the said T. S. Tate, who expressly agreed to make his claim second and subsequent to the claim of Sledge, McKay & Co, for supplies so furnished. That during the year 1873 it was ascertained that a large sum would be necessary to enable Tate & Faulkner to cultivate their crop, and the said Sledge, McKay & Co. advanced the same to them by the consent and at the request of said T. S. Tate and his trustee, the appellee, and the said Sledge, McKay & Co. in pursuance of said agreement at various times advanced the said Tate & Faulkner divers other sums of money in excess of the $3500, and supplies to enable them cultivate, gather, gin and ship their crop, amounting in all to over $7000. That Sledge, McKay & Co. did receive from Tate & Faulkner and sold for them cotton amounting to more than $3500. But that they, in shipping, found it necessary to draw large sums of money on said cotton to pay off charges thereon, which said sums Sledge, McKay & Co. were compelled to advance and pay, to secure the said cotton at all; that the whole proceeds of said cotton should not be credited on the said deed of trust debt, and that the said T. S. Tate and the appellee, his trustee, consented to waive their right and permit the said advances to be charged against said cotton on general account. That said debt secured by said deed of trust for the benefit of Sledge, McKay & Co., has not been paid. That on an adjustment between Sledge, McKay & Co. and Tate & Faulkner, on the 29th January, 1874, there was

found to be due, from the latter to the former, on the debt secured by said deed of trust, the sum of $2249.56, for which Tate & Faulkner executed their note to Sledge, McKay & Co., bearing date the said 29th January, 1874, with 10 per cent. interest from date, which note shows upon its face that it was given for balance of the sum secured by said deed of trust, and remains unpaid.

This appellant files with his answer, as exhibits, a copy of said note and of said deed of trust and of his appointment as trustee.

The defendants, Sledge, McKay & Co., in their answer say that they were applied to by Tate & Faulkner for advances and expressly refused to credit them, then T. G. Tate of the firm of Tate & Faulkner went to Senatobia, Mississippi, where his father Thomas S. Tate resided, and brought him to respondent's business house in Memphis and Thomas S. Tate importuned respondents to furnish the supplies, advances, etc., to Tate & Faulkner, after being refused two or three times, respondents at last agreed to make advances, furnish supplies, etc., to the amount of $3500 to Tate & Faulkner, they executing the deed of trust of the 22d of April, 1873, the said Thomas S. Tate guaranteeing said debt. In pursuance of said agreement, said deed of trust was executed, and at the same time Thomas S. Tate executed to respondents his written guaranty, a copy of which is filed with this answer and made part thereof: That at the same time the said Thomas S. Tate took his draft of deed of trust to be executed for the purpose of securing him against liability to respondents in behalf of said Tate & Faulkner on an alleged debt he claimed against them on one of their notes. That it was then agreed between the parties that said deed of trust for the benefit of Thomas S. Tate should be entirely subordinate to their liabilities to respondents, whether expressed in said deed of trust or not.

Respondents admit that said deed of trust was executed in their presence, but under the circumstances and with the understanding first mentioned, and as respondents understood was to be executed in the State of Arkansas. Respondents also admit that at the time of the execution of the deed of trust for their benefit, they distinctly declined to agree to make advances beyond the said sum of $3500, but state that after they had advanced said amount of $3500 said Tate & Faulkner sent other orders to respondent's house for other and additional advances, and respondents expressly declined to meet said orders, after which refusal Thomas S. Tate came to respondent's house and requested him to make further advances, saying it would not do to stop their supplies when in the middle of their crop, and on the faith of this request and his promise to be responsible for the same, the respondents did make the advances shown by their account current with Tate & Faulkner. That this request and promise was made in the early part of August, 1873, by Thomas S. Tate in person and verbally, but previous to said oral agreement, to-wit, early in July 1873, said Tate & Faulkner had overdrawn their limit of $3500, by an order on respondent's house in favor of T. D. Radcliff for $230 and that respondents before paying the order wrote to Thomas S. Tate for instructions, and that he replied by his letter of July 8th, 1873, authorizing the payment, which letter is exhibited with answer. That early in August, 1873, Thomas S. Tate in person had the understanding heretofore set forth with respondents.

That during the period of said advances beyond said amount of $3500, said Thomas S. Tate recognizing his liability for the same, requested the book-keeper of respondents to draft for him another deed of trust to be executed by said Tate & Faulkner to secure him against these additional liabilities, whether said deed of trust was drafted or executed these respondents do not know.

That they advanced to the said Tate & Faulkner to the amount of $7128.30, and received as net proceeds of cotton shipped them the sum of $4682, and for the balance $2249.56, Tate & Faulkner executed their promissory note to respondents for that amount, dated January 23d, 1874, and payable one day after date. That said Thomas S. Tate was duly notified of the amount of said advances beyond his written guaranty, and after said note of $2249.56 was taken he was notified of the face, and the character of the note was stated to him. He offered then and repeatedly afterwards to join in the note and execute any other assurance or lien respondents might wish, if time was given until his son could raise another crop. That he repeatedly and on different days recognized the debt, and expressed his anxiety that it should be paid, averring that all he wanted was time.

Respondents deny the truth of the allegation that but for their agreement that advances to Tate & Faulkner should not exceed $3500, said second deed of trust for the benefit of Thomas S. Tate would not have been made. That though respondents expressed unwillingness to advance beyond $3500 they made no agreement to that effect.

The substance of the evidence in the case was as follows:

Thomas S. Tate said: The Radcliffe deed of trust was executed to secure me as an endorser for Tate & Faulkner for thirty-seven or eight hundred dollars. It was executed in the counting-room of Sledge, McKay & Co., in Memphis, Tenn. It was drawn up by the book-keeper of Sledge, McKay & Co., with a special understanding between myself and Sledge, McKay & Co. The day plaintiff's deed of trust was drawn, Tate & Faulkner executed a deed of trust to Sledge, McKay Co., to secure them to the amount of $3500. My son T. G. Tate was in Memphis and wrote to me to come to Memphis and assist him to make arrangements to get supplies to run his plantation in Arkansas. I went

Bell, Trustee, vs. Radcliff.

to Memphis, at his request, and saw Sledge, McKay & Co. for Tate & Faulkner, and told them that I would give them letter of credit for $3500, and they were to take the deed of trust, which is exhibited with the paper, and told them also that I was endorser for Tate & Faulkner and that I would take for my benefit the deed of trust to plaintiff, and both deeds of trust were executed at the same time, and the deed of trust for my benefit was fully understood by Sledge, McKay & Co.

Sometime in June, 1873, I was in Memphis and authorized a cask of bacon to be sent to Tate & Faulkner, and agreed to extend my letter of credit for them for five hundred dollars more, provided they would execute to me a deed of trust upon their property for my security in giving an extension of my letter of credit.

The deed of trust for $500 was drawn up by the same person that drew up the other deed of trust, and my son signed it there in the presence of McKay and Fulmer. It was never signed by Faulkner and never executed and I never authorized Sledge, McKay & Co. to furnish Tate & Faulkner any other supplies, except as aforesaid, but refused to do so unless I was made safe by the deed of trust. I did authorize Sledge, McKay & Co. to let Radcliff, the plaintiff, who was a nephew of mine, have two hundred dollars or upwards on my letter of credit.

Tate & Faulkner paid me about $715 on the obligation on which I was endorser, and the balance I have discharged, and taken up the original obligation.

This witness, in answer to the interrogatory: "State if you ever by any writing except as aforesaid, authorized Sledge, McKay & Co. to furnish supplies to Tate & Faulkner? Said: I never did by any writing or talking.

Thomas G. Tate was present at the execution of the two deeds of trust. It was some time in July, 1873, that Tate & Faulk-

Bell, Trustee, vs. Radcliff.

ner had drawn from Sledge, McKay & Co. the $3500.　Sledge, McKay & Co. wrote to Tate & Faulkner that they could not draw any further without an arrangement with T. S. Tate. Went over to Memphis and my father agreed to extend our credit for $500 more, and Tate & Faulkner, to secure him, was to execute another deed of trust for the amount, but it was never completed, Faulkner having refused to execute it.　Fulmer afterwards came to my house some time in the fall, and agreed that he would go back and see Sledge, McKay & Co. about it, and if we would ship our cotton they would furnish us with money and supplies.　He did write to me that if we would send the cotton, the house would extend the accommodations we asked for (letter exhibited marked A, also letter marked B, and made part of deposition).　Tate & Faulkner shipped cotton to Sledge, McKay & Co., to the amount of $4900.

W. M. Sledge, of the firm of Sledge, McKay & Co., whose evidence sustains the answer of Sledge, McKay & Co., in every particular, said, that after Sledge, McKay & Co., had advanced the $3500, mentioned in the deed of trust, they notified Thomas S. Tate of the fact, as we looked to him for the payment of any advances made to Tate & Faulkner, who made application for an additional amount of supplies over and above what was called for in the deed of trust, which we refused to fill until Thomas S. Tate came into our office and notified us that it would not do to stop supplying them in the midst of the crop; to continue to supply them from time to time with only what we thought was necessary, carrying out Thomas S. Tate's instructions as far as we were capable of doing.　That the cotton shipped failed to pay for supplies advanced, leaving a balance of $2249.56, for which Tate & Faulkner executed their note dated the 29th January, 1874, and payable one day after date.　Soon after the execution of this note, Thomas S. Tate came into our

business house to see us in reference to this note, at which time W. M. Sledge and A. N. McKay informed him that this was the unpaid balance due for supplies furnished Tate & Faulkner, and that the firm looked to him for the payment of the note, and we wanted to know what he was going to do about it. He said he had no money to pay it himself. That he would not pay it then, and that Tate & Faulkner could not pay it, but that he was willing to unite in a joint note with them for the payment of the said amount of money payable in the fall of 1874. We refused to take the note as proposed unless he would give a city acceptance, or a deed of trust on his land. He refused to do either.

A. N. McKay, one of the firm of Sledge, McKay & Co., said: "I have been present and heard all the testimony given by Wm. M. Sledge in this case, and am knowing to each and all of the facts stated by him, and know them all to be true."

On cross examination this witness stated further: That after Sledge, McKay & Co. had furnished Tate & Faulkner supplies amounting to $3500, they refused to make any further advances until requested by Mr. T. S. Tate to do so, he becoming responsible for the same, and that all supplies furnished over and above the deed of trust were furnished at the verbal request of T. S. Tate, made in the presence of Mr. Fulmer. Thomas S. Tate did not refuse to let Sledge, McKay & Co. furnish other bills of supplies after the $3500 had been supplied. Before the deed of trust had been signed and recorded, and after a small amount of supplies had been advanced, Tate & Faulkner being a little tardy about executing the deed of trust and sending it back, Thomas S. Tate ordered Sledge, McKay & Co. not to advance them any thing more until after the deed of trust was fully executed and returned. The said Thomas S. Tate stopped advances to Tate

Bell, Trustee, vs. Radcliff.

& Faulkner until the papers were sent back, and when the papers were satisfactory to him he ordered Sledge, McKay & Co. to go ahead and supply them.

J. S. Caruthers, of the City of Memphis, a witness in this cause: "In September or October, 1873, in the office of Sledge, McKay & Co., in Memphis, I heard Thomas S. Tate say that he would become responsible for further advances made by them to Tate & Faulkner, they having advanced the amount they had agreed to do under the deed of trust given by Tate & Faulkner to secure them. I remember this more distinctly because Mr. Faulkner was an old war prison friend of mine, and I was interested in his welfare."

This was all the evidence given in the case.

At the October Term, 1876, of the Lincoln Circuit Court, this cause came on to be heard upon the complaint and amended complaint and exhibits to said complaint, the answer of the defendant, Marcus L. Bell, trustee, and the exhibit of a copy of the note of Tate & Faulkner, which by consent was read in evidence for defendants in lieu of the original note, also the answer of Sledge, McKay & Co., and the exhibits thereto. The depositions of Thomas S. Tate and Thomas G. Tate and the exhibits to the deposition of Thomas G. Tate. The deed of trust from Tate & Faulkner to the plaintiff Radcliff for the benefit of Thomas S. Tate, and also the deed of trust from Tate & Faulkner for the benefit of Sledge, McKay & Co., on the part of the plaintiff, and the depositions of Wm. M. Sledge, A. N. McKay, John W. Fulmer and J. S. Caruthers on the part of the defendants.

Whereupon the court being satisfied from the evidence that the deed of trust from Tate & Faulkner for the benefit of Sledge, McKay & Co. had been fully paid off and discharged before the said suit of replevin for the mules and cotton as

described in complaint was instituted and that all of said property is included in the deed of trust from Tate & Faulkner to plaintiff Radcliff for the benefit of Thomas S. Tate, is in full force and effect, and that the injunction was properly granted. It is therefore ordered, adjudged and decreed that said injunction be made perpetual, and that said defendants be perpetually enjoined from further prosecuting said replevin suit, and that they pay all the costs herein.

From which judgment and decree of the court the defendants appealed to this court.

This is a contest between Siedge, McKay & Co. beneficiaries in the first, and Thomas S. Tate beneficiary in the second deed of trust. The evidence shows that Tate & Faulkner, planters of Lincoln County, early in the year 1875, applied to Sledge, McKay & Co., a mercantile firm in Memphis, to furnish them supplies, to enable them to cultivate their plantation. Sledge, McKay & Co. at first refused to furnish the supplies; afterwards Thomas G. Tate, of the firm of Tate & Faulkner, went to Mississippi and induced his father, Thomas S. Tate, who resided there, to go with him to the business house of Sledge, McKay & Co., who at length agreed to furnish the supplies to Tate & Faulkner to the amount of $3500, to secure which they executed the aforesaid deed of trust. The said Thomas S. Tate, at the same time executing to Sledge, McKay & Co. his written guaranty for the payment thereof.

At the same time the second deed of trust was prepared for the benefit of Thomas S. Tate, and afterwards executed by Tate & Faulkner.

True, it has been questioned whether the second deed sufficiently identifies the property embraced in it, as being the same contained in the first deed of trust, and while the second deed is not drawn with the precision and accuracy which ought to be

observed in the preparation of such papers, we think there can be no reasonable doubt but that both deeds embraced the same property.

Supplies to the amount of $3500 mentioned in the first deed of trust having been furnished by Sledge, McKay & Co. to Tate & Faulkner, they declined making further advances until early in the month of August, 1873, the said Thomas S. Tate came to the house of Sledge, McKay & Co. and requested them to make further advances, saying it would not do to stop their supplies in the middle of their crop, promising at the same time to be responsible for such supplies. Upon the strength of this request and promise, Sledge, McKay & Co. made further advances to Tate & Faulkner, amounting in the whole to $7128.36, all of which was required by Tate & Faulkner to enable them to cultivate, gather and secure their crop.

At this point we cannot overlook the conflict in the testimony of witnesses, whose depositions were read upon the hearing of this cause in the court below.

Thomas S. Tate, the beneficiary under the second deed of trust, denies positively that he had authorized or directed Sledge, McKay & Co. to furnish any other or further supplies to Tate & Faulkner over and above the $3500 mentioned in the first deed of trust, except a small order for $200 or $300 in favor of his nephew, Radcliff, and that he never assumed responsibility to Sledge, McKay & Co. for the payment of such additional supplies; while William M. Sledge and A. N. McKay, beneficiaries in the first deed of trust, and John W. Fulmer and J. S. Caruthers as positively asserted, that he did authorize and direct Sledge, McKay & Co. to furnish such additional supplies to Tate & Faulkner, and these latter witnesses give time, place and circumstances.

The witnesses are all unimpeached, and so far as this court knows of equal credibility; but the weight of evidence is clearly in favor of Sledge, McKay & Co., four witnesses testifying affirmatively to the truth of certain material facts; while a single witness denies the truth of those facts.

When it is remembered that Sledge, McKay & Co., although applied to, refused to furnish supplies to Tate & Faulkner until the first deed of trust was executed and the within guaranty given by T. S. Tate to secure payment for advances to the amount of $3500, and that when that amount of supplies had been furnished, Sledge, McKay & Co. refused to make further and additional advances, it would seem improbable that they would furnish additional supplies, and make advances to Tate & Faulkner to the amount of nearly $4000, above the amount mentioned in the deed of trust, at the simple request of Tate & Faulkner, or upon a promise by them to ship all their cotton to Sledge, McKay & Co., which they were already bound to do by the written guaranty of Thomas S. Tate. Without speculating, however, about the probability of the case we have conclusive testimony that these additional advances were made by Sledge, McKay & Co., at the request of Thomas S. Tate, he urging their shipment and assuring them he would be responsible for the payment of the same.

Having reached a satisfactory conclusion as to the facts of the case, our next inquiry will be as to the rights of the respective beneficiaries under the first and second deeds of trust, in connection with the additional advances by Sledge, McKay & Co.

The first deed of trust was given to secure them for supplies furnished, and to be furnished, Tate & Faulkner, to the amount of $3800.

The second or junior deed of trust was given avowedly to secure Thomas S. Tate, against his endorsement on a certain obligation

executed by Tate & Faulkner to Lane & Moore, for $3700, or $3800.

The second deed was to· be subordinate to the first, and the claim to the trust property, under the second deed, could not arise until the first deed was satisfied.

It is contended by the appellee that when the amount of $3500, in supplies, had been furnished by Sledge, McKay & Co., to Tate & Faulkner, it was a satisfaction of the first deed of trust, and that as a consequence the second deed supersedes and takes the place of the first.

This is an important question and deserves our serious consideration.

It will be remembered that when the amount of supplies limited in the first deed of trust was exhausted, Thomas G. Tate of the firm of Tate & Faulkner, and Thomas S. Tate, beneficiary in the second deed, went to the business house of Sledge, McKay & Co., in Memphis in the summer of 1873, at which time and place it was arranged between the parties that Sledge, McKay & Co., should continue to furnish Tate & Faulkner additional supplies as needed, not however until Thomas S. Tate, gave express directions that such supplies should be furnished, saying it would not do to stop their supplies in the midst of the crop, and declaring to Sledge, McKay & Co., that he would be responsible for these advances.

It will be observed, that the deed of trust recites that: "Whereas the said Tate & Faulkner, were justly indebted, or to become indebted during the year 1873, to Sledge, McKay & Co., in the sum of thirty five hundred dollars ($3500), for supplies already advanced, and supplies, cash and merchandise to be advanced during that year, to enable them to raise and grow a crop on said plantation."

While the amount of supplies was limited in terms to $3500, the controlling purpose of the deed, was to secure for Tate & Faulkner, a sufficient amount of supplies to enable them to raise and grow their cotton crop for that year. If this crop had been abandoned in mid-summer, as it must necessarily have been, without the needed supplies, it would not only have been ruinous to Tate & Faulker, but the interests of Sledge, McKay & Co., and T. S. Tate, in the trust fund would have been seriously compromised if not totally sacrificed.

When it was ascertained that the crop could not be grown, matured, and saved, without additional advances, and Tate & Faulkner were appealing to Sledge, McKay & Co., to make them advances, and Thomas S. Tate was also urging that the advances be made and assuming a personal responsibility for the same, Sledge, McKay & Co., resumed their shipments of supplies to Tate & Faulkner, and continued to furnish them such supplies as were needed until their crop was grown, matured and saved.

Are they not then entitled to the protection of a court of equity for advances made under these circumstances?

When the arrangement was made to furnish additional supplies after the limit of $3500, had been reached, with the assent and approbation of Thomas S. Tate, we must regard it as an implied waiver and postponement of any contingent rights or equities he might have under the second deed of trust to the rights and equities of Sledge, McKay & Co., under the first deed, until all their advances were paid for and satisfied out of the trust fund, and this appears the more reasonable, when we reflect, that from the beginning, Thomas S. Tate, was interested in the matter of supplies to be furnished Tate & Faulkner, which would not have been furnished in the first instance but for his written guaranty, and that when the arrangement was made for additional advances, it was his special request and assumption of responsibility for the

payment of the same that induced Sledge, McKay & Co., to continue shipments of supplies to Tate & Faulkner, so as to enable them to carry out the purposes of the deed of trust in the enlargement and preservation of the trust fund in which all the parties were interested.

The power of a court of equity is believed to be ample to protect the interests of all parties in the trust fund, subordinating, if necessary, the literal wording of the deed of trust in so far as it limits the amount of supplies to $3500 to the higher purposes had in view when the deed was executed, which was to provide for future advances.

Such provisions in deeds of trust and mortgages are of frequent occurrence, and although there may be a limitation as to the amount of advances furnished, a court of equity will protect and uphold additional advancements over and above the limitation in the deed or mortgage, if necessary to carry out the purposes of the trust.

In the case of *Lawrence* v. *Tucker*, 23 How., 14, where a mortgage was given to secure the payment of a note for $5500, and such advances as then had been or might be made within two years, not to exceed in all an indebtment of $6000, and advances were made to an amount largely over $6000; the mortgage was held good to cover the advances and the note for $5500.   7 Cranch., 34; 1 Peters, 386; 5 Otto, 746; 31 Ark., 62.

We regard the first deed of trust as a deed providing for future advances, the amount to be determined by the object and purposes of the trust, and the actual necessities of the case.

If, however, the amount of $3500 mentioned in the first deed of trust, and the amount due for additional supplies furnished by Sledge, KcKay & Co., be viewed in the light of different debts or liabilities, due from Tate & Faulkner, they having failed to direct the application of the proceeds of the cotton shipped, to

Bell, Trustee, vs. Radcliff.

the payment of either one or the other of said liabilities, then the creditor, Sledge, McKay & Co., had the undeniable right to make the application, and in the exercise of this right they applied the proceeds of the cotton shipped to the payment of the extra and additional advancements until they were paid for, and the residue of said proceeds was then applied to the deed of trust debt, leaving a balance due Sledge, McKay & Co. of $2249.56 for which amount Tate & Faulkner executed and delivered to them their promissory note, before mentioned, it being for balance secured by the deed of trust.

As to the application of payments where different debts are due from the same party, the rule is well settled, that he who makes the payment must declare on what account he pays it, but if the payment is general, the right of application is in the party who receives the money. *Wickerson* v. *Sterne*, 9 Mod. Rcpts., 427, Leach's Edit., where it was also held that the party paying must direct the application at the very time he pays. *Manning* v. *Wortram*, 2 Mod. R., 606; 1 Bibb, 334; 5 Mon., 251; 4 J. J. Mars., 98.

In the application of the payments by Tate & Faulkner, Sledge, McKay & Co., properly, we think, applied the proceeds of the cotton to the payment for the additional supplies first, and the remaining proceeds of said cotton were applied to the liquidation of said deed of trust debt.

We, therefore, upon a full review and careful consideration of this cause, are of opinion that the contingent equities of the second deed ought to be postponed until the first deed is satisfied and the additional advances paid for out of the trust fund.

We are therefore of opinion that the court below erred in granting the injunction in the cause and perpetually enjoining the defendants in the court below from further prosecuting their action of replevin, and do therefore reverse the decree of the

Circuit Court of Lincoln County, and remand this cause to said court with instruction to dissolve said injunction, with leave to the appellees to amend their bill of complaint if they desire to do so, in order that the property embraced in said deeds may be sold under decree of said Circuit Court; first paying out of the proceeds thereof the balance of indebtedness due Sledge, McKay & Co. on their deed of trust, and the residue, if any, to Thomas S. Tate, the beneficiary in the second deed of trust.